**Don Edward RATLIFF, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 18A02–8904–CR–148.

Court of Appeals of Indiana, Second District.

Nov. 20, 1989.

Transfer Denied March 5, 1990.

Alan K. Wilson, Muncie, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Don Edward Ratliff appeals the revocation of his probation. We reverse.

### FACTS

The July 22, 1987 order book entry reflects that upon his conviction for non-support of a child, a class D felony, Ratliff was sentenced as follows:

> The Court now fines the defendant in the sum of $350.00 plus costs in the sum of $103.00[;] in lieu of payment of fines in the sum of $350.00 defendant is to complete Alternative Service at the rate of $25.00 per day. Further, the Court now sentences the defendant to two years to the Department of Correction, all suspended on the condition that defendant pay current support of $70.00 per week and an additional $10.00 per week on arrearage which is in the sum of $16,090

> thru July 3, 1987. Defendant is to commence paying support Friday, July 24, 1987. Defendant is to submit to two years of supervised probation, and probation user's fees are hereby waived. Defendant to pay costs on or before October 23, 1987. Parties notified in Open Court.

Record at 25–26.

In January 1988, a petition for the revocation of Ratliff's probation was filed. A hearing on the petition was set for February 10, 1988 at 1:30 p.m. When Ratliff failed to appear[1] a bench warrant was ordered issued. Pursuant to that bench warrant, Ratliff appeared in open court on September 19, 1988 without counsel. The trial court announced it would "proceed with the petition. I want to know what the problem is. And then I'll know whether to hold this man for tomorrow morning or whether or not we should proceed with or without an attorney." Record at 83. Ratliff was interrogated under oath by the court concerning his residences, his work, his support history, his reasons for not complying with the order, his work history, etc. At the end of this questioning, the court advised Ratliff the court would appoint a public defender to represent him in any further proceedings.

The hearing resumed on September 21, 1988 at which time Ratliff was represented by counsel. At the hearing Ratliff moved to dismiss the petition on the ground the sentencing court failed to specify the conditions of his probation in the record and failed to provide him with a written copy of the conditions at his sentencing hearing. The trial court denied the motion. Also, Ratliff's counsel moved to strike the incriminating statements made by Ratliff in response to the court's interrogation at the September 19 hearing because the statements were obtained in violation of Ratliff's right to counsel and his right against self-incrimination. The trial court denied this motion as well.

The only evidence presented at the September 21 hearing was that Ratliff had not

---

1. The record does not reveal that notice of the hearing was served upon Ratliff.

made any support payments directly to his former wife since his sentencing.

The trial court ordered Ratliff's probation revoked for his failure to pay support and for his failure to submit to supervised probation. This appeal ensued.

## DISCUSSION

### I.

Citing *Harder v. State* (1986), Ind.App., 501 N.E.2d 1117, *Lucas v. State* (1986), Ind.App., 501 N.E.2d 480, and *Disney v. State* (1982), Ind.App., 441 N.E.2d 489, Ratliff argues the trial court erroneously revoked his probation. Specifically he asserts the sentencing court failed to comply with the mandate of IC 35–38–2–1(a) (1988) and IC 35–38–2–2(b) (1989 Supp.).

The relevant statutory provisions read:

Whenever it places a person on probation, the court shall specify in the record the conditions of probation.

IC 35–38–2–1(a).

When a person is placed on probation the person shall be given a written statement of the conditions of his probation.

IC 35–38–2–2(b).[2]

■ IC 35–38–2–1(a) imposes upon the sentencing court a duty to specify the conditions of probation in the record at the time it places a defendant on probation. The sentencing court may fulfill this duty by orally stating the conditions "on the record" or by entering a written order which states the conditions *and* becomes part of the record. Here, the sentencing court complied with the mandate of IC 35–38–2–1(a) by specifying the relevant conditions of probation in its order book entry memorializing the sentencing hearing. Thus, there is no merit to Ratliff's claim the revocation is erroneous because the sentencing court violated IC 35–38–2–1(a).

However, Ratliff is correct when he claims he was not provided with a written statement of the conditions of his probation at his sentencing as required by IC 35–38–2–2(b).

■ The question is whether the error is reversible error. This court previously has held a defendant's failure to receive a written statement of his probation conditions is harmless error if the sentencing court complies with IC 35–38–2–1(a) in a manner that also fulfills the notice function intended by IC 35–38–2–2(b).

In *Kerrigan v. State* we explained:

Although the trial court did not give Kerrigan a written copy of the terms and conditions of his probation when he was sentenced, the record reveals the trial court orally, on the record, explained the conditions to him, and which Kerrigan acknowledged he understood. Therefore, although the trial court erred in omitting to provide Kerrigan with a written statement of his conditions of probation at sentencing, the error is harmless.

*Kerrigan v. State* (1989), Ind.App., 540 N.E.2d 1251, 1252 (footnote omitted). The oral statement relied upon in *Kerrigan* was a sufficient advisement of the conditions of probation. To be sufficient, an oral advisement must 1) apprise the defendant in adequately definite terms of the behavior required of him, 2) be addressed to the defendant, 3) be administered by the sentencing court, and 4) be identified as conditions of the defendant's *continued* probation.

■ Here, while the sentencing court's order book entry complied with IC 35–38–2–1(a), it failed to fulfill the notice function of IC 35–38–2–2(b) because Ratliff was not informed of its contents. Neither was the notice function fulfilled by an adequate oral advisement at the sentencing hearing.

The sentencing record, in relevant part, reads:

THE COURT: All right. Now let me see if I understand the plea agreement. . . .

\*   \*   \*   \*   \*   \*

THE COURT: Okay. Then we have two years D.O.C. suspended. Current sup-

---

**2.** Although this court stated in *Disney v. State* (1982), Ind.App., 441 N.E.2d 489, that IC 35–38–2–2(b) places the duty on the sentencing court to give the defendant a written statement of his probation conditions at sentencing, IC 35–38–2–2(b) in fact prescribes only the time for giving a defendant a written copy of conditions of probation; it does not identify the actor.

port of seventy dollars per week. Is that—he has agreed to pay support of seventy dollars per week? Is that what that says?

[THE STATE]: That's seventy dollars a week plus ten on arrears.

[DEFENSE COUNSEL]: Yes.

THE COURT: Okay.

[DEFENSE COUNSEL]: Plus ten on the arrearage.

[THE STATE]: Your Honor, I do have [sic] calculated the amount of the arrearage if you'd like to put that in the order. Now I had that calculated through the third of July of this year.

THE COURT: Okay.

[THE STATE]: And I calculated that he's sixteen thousand dollars—sixteen thousand ninety dollars in arrears as of July 3rd, 1987.

THE COURT: Okay. I will accept the terms of the presentence investigation and plea agreement. Will sentence according to that.

[THE STATE]: Excuse me your Honor. May I interrupt again?

THE COURT: Yes.

[THE STATE]: Doesn't the plea agreement also say supervised probation?

THE COURT: Yes.

[THE STATE]: For two years—okay.

THE COURT: The rest of it I understood. Those are the only things that I questioned about. He's also placed on good behavior and you're agreeing to waive supervised probation fees I assume?

Record at 68, 70–71.

The colloquy does not render harmless Ratliff's failure to receive a written statement of his probation conditions as required by IC 35–38–2–2(b) because the colloquy is not addressed to Ratliff, nor did it advise him that payment of support[3] and submission to supervised probation[4] was conduct required of him as a condition of his *continued probation*. The colloquy appears to be a discussion between the court and the State identifying the terms of the plea agreement. Therefore, the trial court erred in revoking Ratliff's probation because Ratliff was not provided with a written statement of the relevant conditions of his probation at his sentencing hearing.

## II.

We disagree with the implication in *Disney* that if a defendant fails to receive a written statement of the conditions of probation, as required by IC 35–38–2–2(b), the only probation condition that can ever exist is that the probationer not commit a crime.

■■■ *Disney* presumes a defendant probationer is irrevocably prejudiced by the omission. We disagree. A similar presumption concerning statutory advisements in guilty plea hearings was held inappropriate in *White v. State* (1986), Ind., 497 N.E.2d 893. We also conclude a irremediable, irrebutable presumption of prejudice is inappropriate and unjustified if the mandate of IC 35–38–2–2(b) is not met at the time of sentencing. If the record reveals

---

**3.** The trial court's judgment cannot be sustained on the theory that Ratliff's failure to pay support constituted a crime because the trial court did not make the finding of culpability necessary for a criminal offense. In fact, the only evidence pertinent to culpability was presented at the September 19, 1988 revocation hearing. The evidence at that hearing was obtained by the trial court by interrogating Ratliff. That procedure, to the extent the trial court proceeded, violated the court's responsibility to serve as a fact-finder, not a fact-presenter. The burden of proof in a revocation proceeding is on the State, not the trial court. IC 35–38–2–3(d) (1988). Also, the process violated Ratliff's right to counsel during a probation revocation proceeding, IC 35–38–2–3 (1988), and his right

against self-incrimination insofar as it could form the basis for a new criminal charge of non-support. Further, the trial court failed to make the finding required by IC 35–38–2–3(e) (1988):

> Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay.

**4.** The only evidence Ratliff failed to submit to supervised probation was obtained by the trial court at the September 19 revocation hearing and is subject to many of the same defects as the evidence discussed in footnote 3 *supra*.

the conditions of probation are specified by the court in the record under IC 35–38–2–1(a) and the probationer receives a written statement of those conditions after sentencing but prior to the asserted violation, the failure to comply with IC 35–38–2–2(b) at the sentencing hearing is harmless error.[5] In other words, subsequently providing a probationer with a written statement of the trial court's order stating the conditions of probation will satisfy the statutory mandate of IC 35–38–2–2(b). This procedure is not inconsistent with *Lucas v. State* (1986), Ind.App., 501 N.E.2d 480, *Harder v. State* (1986), Ind.App., 501 N.E.2d 1117, or *Atkins v. State* (1989), Ind.App., 546 N.E.2d 863. In *Lucas, Harder* and *Atkins* the relevant terms of probation were not entered into the record at the time of sentencing. That omission is irremediable. A defendant's probation cannot be revoked for the violation of conditions not *specified*, either orally or in writing, at the time of sentencing.

Judgment reversed.

BUCHANAN, J., concurs.

CONOVER, J., dissents, with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. It is apparent from the majority's opinion the trial court's order was the direct result of the written plea agreement entered into between Ratliff and the State. The trial court, in essence, merely entered of record the agreement contained therein.

In that factual posture, I believe the claimed error in not furnishing him with a written copy of the terms of his probation was at worst, harmless. The notice function intended by IC 35–38–2–2(b) was actually fulfilled here, as it was in *Kerrigan v. State* (1989), Ind.App., 540 N.E.2d 1251. The written plea agreement was an appropriate written substitute for the required written statement of conditions. Although the substitute in *Kerrigan* was the trial

court's comprehensive oral advisement, I believe the comprehensive written plea agreement fulfilled *Kerrigan's* four requirements and rendered any error in this regard harmless.

I would affirm the trial court in all things.

---

5. Of course, the probationer cannot suffer any penalty for conduct which violates the conditions occurring prior to his receipt of the written statement other than for conduct constituting a crime.